United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON HIBBERT, | No. C 06-3294 WHA (PR) |
|     Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| A. P. KANE, Warden, | |
|     Respondent. | |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 1993 a jury convicted petitioner of attempted murder with use of a firearm. He was sentenced to life plus five years with the possibility of parole (exh. 1).[1]  June 25, 2004, after a hearing before the Board of Prison Terms ("Board"), during which petitioner was represented and was given an opportunity to be heard, the Board found petitioner unsuitable for parole (exh. 9 at 116-129 (decision of Board of Prison Terms)). The Board based its decision upon the cruelty of the offense, that the victim was mutilated or defiled, that the motive was trivial or

---

[1] Citations to "Exh." are to the exhibits attached to respondent's answer.

1  inexplicable, petitioner's record of violence, his escalating pattern of criminal behavior, his
2  failure to benefit from previous probations, his insufficient participation in self-help programs,
3  his misconduct while incarcerated, his unrealistic parole plans, the opposition of the district
4  attorney, and a negative psychological report (*ibid.*).

**DISCUSSION**

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *See id.* at 409.

2

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.     ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) his due process rights were violated when the Board denied parole for the second time based on the circumstances of his crime; (2) the Board's decision was arbitrary, capricious, and not supported by the evidence; (3) Section 3041(b) of the California Penal Code, relating to finding unsuitability for parole for the safety of society, is unconstitutionally vague; and (4) the Board's regulations are not within the authority delegated to it by the Penal Code, so application of them to petitioner violated his due process rights.

**1.     DUE PROCESS IN PAROLE PROCEEDINGS**

Petitioner's first and second issues are essentially the same, namely a claim that the Board's decision was not supported by sufficient evidence to conform with due process.  The two issues therefore will be discussed together in this section.

Among other things, respondent contends in response to this claim that California prisoners have no liberty interest in parole and that if they do, the only due process protections

3

available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends that even if there was insufficient evidence to support the result, that was not a due process violation, hence not ground for federal habeas relief.

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

### a. LIBERTY INTEREST

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause. The right was created by the "expectancy of release provided in [the Nebraska parole statute.]" That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts. *Id.* at 11–12. The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S. 369 (1987). There it held that a similar liberty interest was created even though the parole board had great discretion. *Id.* at 381. For parole decisions, this mode of analysis survived the Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515 U.S. 472 (1995). *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole). In such a case, a prisoner has liberty interest in parole that cannot be denied without adequate procedural due process protections. *See Allen*,

4

1  482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

2  Respondent contends that California law does not create a liberty interest in parole. But California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest in release on parole.  In California, the panel or board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).  Under the clearly established framework of *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).  The scheme requires that parole release be granted unless the statutorily defined determination (that considerations of public safety forbid it) is made. *Ibid.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence implicated prisoner's liberty interest).  In sum, the structure of California's parole scheme -- with its mandatory language and substantive predicates – gives rise to a federally protected liberty interest in parole such that an inmate has a federal right to due process in parole proceedings.

Respondent relies on *In re Dannenberg*, 34 Cal. 4th 1061 (Cal.), *cert. denied*, 126 S. Ct. 92 (2005), as authority for his contention that the California statute does not create a liberty interest in parole.  This argument has been rejected by the United States Court of Appeals for the Ninth Circuit. *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1127-28 (2006).

Respondent's argument as to liberty interest is without merit.

### b. DUE-PROCESS PROTECTIONS

Contrary to respondent's argument, the Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary

5

hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128. The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

Recent Ninth Circuit cases reflect that a critical issue in parole denial cases is the Board's use of evidence from the commitment offense and prior offenses. In *Biggs*, the court explained that the some evidence standard may be considered in light of the Board's decisions over time. *Biggs*, 334 F.3d at 916-917. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Id.* Although the *Biggs* court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." *Id.* at 916.

The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. *Sass* determined that it is not a due process violation per se if the Board determines parole suitability

6

1 based solely on the unchanging factors of the commitment offense and prior offenses. *See id.*
2 (prisoner's commitment offenses in combination with prior offenses amounted to some
3 evidence to support the Board's denial of parole). However, *Sass* does not dispute the argument
4 in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current
5 threat to the public safety.

6 In *Irons* the Ninth Circuit emphasized the continuing vitality of *Biggs*, but concluded
7 that relief for Irons was precluded by *Sass*. *See Irons*, 470 F.3d at 664. The Ninth Circuit
8 explained that all of the cases in which it previously held that denying parole based solely on
9 the commitment offense comported with due process were ones in which the prisoner had not
10 yet served the minimum years required by the sentence. *Id.* at 665. Also, noting that the parole
11 board in *Sass* and *Irons* appeared to give little or no weight to evidence of the prisoner's
12 rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in
13 some cases, indefinite detention based solely on an inmate's commitment offense, regardless of
14 the extent of his rehabilitation, will at some point violate due process, given the liberty interest
15 in parole that flows from relevant California statutes." *Id.* (citing *Biggs*, 334 F.3d at 917).

16       **c.**    **MERITS**

17 As discussed above, a finding of unsuitability for parole such as the one at issue here
18 must be supported by "some evidence." *Irons*, 479 F.3d at 662. In this case the Board's
19 decision was not supported solely by the circumstances of the crime, so this is not a "*Biggs*
20 case."

21 The "some evidence" issue was raised by petitioner in state habeas petitions. His
22 petitions in the California Supreme Court and the California Court of Appeal were denied
23 without comment, so the Court "looks through" those decisions to the last reasoned decision,
24 that of the California Superior Court for the County of Los Angeles. *See Shackleford*, 234 F.3d
25 at 1079 n. 2. The superior court concluded that there was no evidence to support the Board's
26 findings that the offense was committed in an especially aggravated or violent manner
27 compared to other attempted murders nor that victim was abused, mutilated or defiled (exh. 4 at
28 2). It also found that there was no evidence that the motive was inexplicable, but that there was

7

1  evidence to support the conclusion that the motive was trivial in relation to the offense, in that
2  petitioner shot at someone simply because of anger at loss of property (*ibid.*). It also concluded
3  that there was some evidence to support the conclusions that petitioner had an unstable social
4  history, had previously attempted to inflict serious injury on another, and was unsuitable
5  because of "negative institutional behavior" (*id.* at 3). The court also concluded that
6  petitioner's misconduct reports in prison and the negative psychological report were some
7  evidence that he needed additional self-help programming and that the psychological report did
8  not support release (*ibid.*). Finally, the court held that there was not "some evidence" support
9  the Board's conclusion that petitioner's parole plans were insufficient (*id.*).

10  Petitioner's offense was shooting at a repossession team that was towing away his truck
11  (*id.* at 1-2). The repo men informed him that they were repossessing the truck; petitioner went
12  back to his apartment, got a gun, and shot at the tow truck as it drove away (*ibid.*). The victim
13  was hit in the face and suffered horrible injuries; he went through many surgeries and was
14  saddled with more than $100,000 in medical bills that were not covered by insurance (*id.* at 2;
15  exh. 9 at 117).

16  Petitioner conceded at the hearing that he had received two serious misconduct reports
17  while in prison, the most recent of which was in 2001, only three years before the hearing (exh.
18  9 at 52, 121). In addition, the psychological report said that he had a slightly higher than
19  average potential for violence if released (exh. 9 at 121). These facts, together with the facts of
20  the offense, amount to "some evidence" sufficient to support the denial.

21  Because there was no constitutional violation, the state courts' denial of this claim was
22  not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

23

24  **2.    VAGUENESS**

25  Petitioner contends that Section 3041 of the California Penal Code, which governs

26
27
28

8

parole, is unconstitutionally vague.[2] He asserts that the statute provides no instruction as to what the Board is to do when it finds an inmate unsuitable for parole under Section 3041(b)

---

[2] Subsections (a) and (b) of Section 3041 read:

(a) In the case of any inmate sentenced pursuant to any provision of law, other than Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, the Board of Parole Hearings shall meet with each inmate during the third year of incarceration for the purposes of reviewing the inmate's file, making recommendations, and documenting activities and conduct pertinent to granting or withholding postconviction credit. One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and shall normally set a parole release date as provided in Section 3041.5. No more than one member of the panel shall be a deputy commissioner. In the event of a tie vote, the matter shall be referred for an en banc hearing by the board. The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the inmate was sentenced and other factors in mitigation or aggravation of the crime. At least one commissioner of the panel shall have been present at the last preceding meeting, unless it is not feasible to do so or where the last preceding meeting was the initial meeting. Any person on the hearing panel may request review of any decision regarding parole for an en banc hearing by the board. In case of a review, a majority vote in favor of parole by the board members participating in an en banc hearing is required to grant parole to any inmate.

(b) The panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting. After the effective date of this subdivision, any decision of the parole panel finding an inmate suitable for parole shall become final within 120 days of the date of the hearing. During that period, the board may review the panel's decision. The panel's decision shall become final pursuant to this subdivision unless the board finds that the panel made an error of law, or that the panel's decision was based on an error of fact, or that new information should be presented to the board, any of which when corrected or considered by the board has a substantial likelihood of resulting in a substantially different decision upon a rehearing. In making this determination, the board shall consult with the commissioners who conducted the parole consideration hearing. No decision of the parole panel shall be disapproved and referred for rehearing except by a majority vote of the board, sitting en banc, following a public hearing.

Cal. Penal Code § 3041(a)-(b).

after having already done so once, at the initial hearing. Petitioner's contention is without merit because subsection (b) provides that the inmate shall be found unsuitable if "consideration of the public safety requires a more lengthy period of incarceration for this individual." *See* Cal. Penal Code § 3041(b). The considerations relevant to this determination are set out in the Board's regulations, Cal. Code Regs. tit. 15, § 2402(c)(1), and, contrary to petitioner's position, the question of public safety is as relevant at subsequent parole hearings as it is at the initial hearing. The rejection of this claim by the state courts was not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

### 3.  DELEGATION OF AUTHORITY

Petitioner contends that the regulations governing the grant or denial of parole are beyond the authority delegated to the Board by Section 3041 of the California Penal Code. This is a state-law claim which cannot be the basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

### CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September   25  , 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\HIBBERT294.RUL.wpd